**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION**

HUGO RAMIRO ACOSTA LOJA,

    Petitioner,

v.

WARDEN T. JOHNS,

    Respondent.

CIVIL ACTION NO.: 5:17-cv-34

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Petitioner Hugo Ramiro Acosta Loja ("Acosta Loja"), who is currently housed at D. Ray James Correctional Facility in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response. (Doc. 11.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS without prejudice** Acosta Loja's Petition, **DIRECT** the Clerk of Court to **CLOSE** this case, and **DENY** Acosta Loja *in forma pauperis* status on appeal.

## **BACKGROUND**

Acosta Loja is currently serving a 120-month federal sentence for possession of heroin with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). (Doc. 12-1, p. 7.) He has a home detention eligibility date of July 3, 2019, and a projected release date of January 3, 2020. (Id.) On May 22, 2016, prison officials issued an incident report against Acosta Loja for alleged violations of the Bureau of Prisons' ("BOP") discipline regulations. (Doc. 1-1, p. 5.) At the discipline hearing, Acosta Loja admitted to possession of a hazardous tool, namely a cell phone. (Id.) As a result, Acosta Loja was sanctioned with, among other

things, loss of 41 days' good conduct time and forfeiture of 90 days' non-vested good conduct time. (Id.)

On March 30, 2017, Acosta Loja filed this Petition contesting the loss of his good conduct time. (Doc. 1.) Acosta Loja maintains that the BOP improperly penalized him by sanctioning both his good conduct time and his non-vested good conduct time. (Id. at pp. 6, 8.) Respondent argues that the sanctions were appropriate because they comport with BOP policy, and Petitioner received appropriate process during the disciplinary proceedings. (Doc. 12, pp. 6–10.) However, Respondent asserts that the Court should not review the relative merits of Acosta Loja's Petition because he has not exhausted his available administrative remedies concerning his good time credit sanctions. (Id.)

## DISCUSSION

### I. Whether Acosta Loja Exhausted his Administrative Remedies

#### A. Legal Requirements for Exhaustion

The Eleventh Circuit Court of Appeals has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, 631 F. App'x 840, 842 (11th Cir. 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Id. (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549

U.S. 199, 216 (2007). However, the normal pleading rules still apply, and dismissal is appropriate when an affirmative defense appears on the face of a complaint—making it clear that a prisoner cannot state a claim for relief. Id. at 214–15. Thus, when a party admits in his complaint or petition that he has not exhausted the grievance process, dismissal is warranted. See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to [42 U.S.C.] § 1997e(a) if it is clear from the face of the complaint that the prisoner has not exhausted all administrative remedies available to him.").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).[1]

---

[1] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

3

The United States Supreme Court has noted exhaustion must be "proper." Id. at 92. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90–91. In other words, an institution's requirements define what is considered exhaustion. Jones, 549 U.S. at 218. It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the agency's administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA [Prison Litigation Reform Act], prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts

outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

**C.    Analysis of Acosta Loja's's Efforts at Exhaustion**

In his Petition, Acosta Loja avers that he filed a grievance to appeal his loss of good conduct time. (Doc. 1, p. 2.) However, he indicates "N/A" when asked by the 28 U.S.C. § 2241 Form Petition whether he appealed the denial of his grievance. (Id. at pp. 3–4.) Respondent asserts that Acosta Loja did not, in fact, complete all steps within the grievance process. (Doc. 12, pp. 5–6.) Acosta Loja did not file a Reply. Because it is unclear whether Acosta Loja did in fact exhaust all administrative remedies, the Court will proceed to the second Turner step and make specific factual findings pertinent to the exhaustion question.

5

Inmates at D. Ray James attempting to exhaust administrative remedies for disciplinary matters must first file a BP-10 form with the Regional Director.[2] (Doc. 12-1, p. 3.) If the Regional Director denies the appeal, the inmate may then file a final appeal with the National Inmate Appeals Administrator in the Central Office of the BOP by submitting a BP-11 form. (Id.) The evidence before the Court reveals that Acosta Loja did not complete the administrative remedy process. (Id. at pp. 3, 11.) Acosta Loja's administrative remedy records indicate only two BP-10 forms filed with the BOP—one for the loss of good time credits contested in his Petition and one for "lost property when placed in SHU." (Id. at p. 11.) Acosta Loja does not have any BP-11 filings on record, much less the one needed to contest his good time credits. Acosta Loja did not file a Reply to refute the materials and arguments provided by Respondent.

Thus, under the second Turner step, the Court finds that Respondent's account of Plaintiff's exhaustion to be the more reliable account. Acosta Loja did not complete a final appeal to challenge the loss of his good time credits. In fact, Acosta Loja's Petition appears to corroborate this finding. Although Acosta Loja did not affirmatively check "No" when asked whether he had appealed the Regional Director's decision, he did proceed to write "N/A" in answer to every subsequent question asking him whether he appealed. (Doc. 1, pp. 2–4.)

Therefore, it is apparent that Acosta Loja failed to properly exhaust his available administrative remedies prior to filing this Petition. Consequently, the Court should **DISMISS** Acosta Loja's Petition.

---

[2] The Court cannot determine whether an inmate at D. Ray James must also file a grievance at the local level with the Warden. Respondent does not include this information in either their briefing or the affidavit provided by the Administrative Remedy Clerk. In fact, Respondent failed to provide any supplemental materials documenting the grievance policy and procedures at either the local or BOP level.

## II. Leave to Appeal *in Forma Pauperis*

The Court should also deny Acosta Loja leave to appeal *in forma pauperis*. Though Acosta Loja has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous, and thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Acosta Loja's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

**CONCLUSION**

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS without prejudice** Acosta Loja's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **DIRECT** the Clerk of Court to **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Acosta Loja leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon Acosta Loja and Respondent.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 19th day of September, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA